Curia per
Johnson, J.
The only question involved in this case was settled by the judgment of the Court in Dunlap vs. Crawfords, McCord’s Chan. 171, and I only use it now for the purpose of expressing more fully than Í then did the reasons which induced me to concur in that judgment.
Until the organization of this Court, in Dec. 1825, the Chancellors, sitting as a Court of Appeals, had exclusive and final jurisdiction in all matters of Equity cognizance. And Judges of the Law Courts sitting as an Appellate Court under the name of the Constitutional Court, held *477 like cognizance of all cases arising at Law. As might have been expected the two Courts occasionally differed,, and amongst other things, on the question now before us.
In Hall vs. Goodwyn and Moore, 2 M‘Cord, 383, decided in May, 1820, the Constitutional Court held, that a devise of lands without words of inheritanc or perpetuity, vested only a life estate; and the case of Jenkins vs. Clement and Deas, Harper’s Eq. Rep. 73, decided in 1824, the Court of Appeals in Equity in the construction of a clause in this identical will, expressed in precisely the same terms with that now under consideration, held unanimously, that the devise passed a fee, although there are no words of perpetuity or inheritance, and laid down the rule broadly that a general unqualified devise of lands, vested a fee simple. The two Courts were at variance on several other important points of law, and the rights of parties depended more upon the tribunal before which they were investigated, than any settled rule. This was an evil growing out of this double system of jurisprudence, and was too grievous to be long borne by the community, and the legislature as a partial remedy, undertook by the Act of Dec. 1824 to fix a rule and declare the law in most or all of the questions on which the two Courts had differed. By the 1st sec. of this act it is enacted, “that no words of limitation shall hereafter be necessary to convey an estate in fee simple by devise, but every gift of land by devise, shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator expressed or implied.”
It is agreed on all sides that in the construction of wills made subsequently to this act, the rule of construction presented by it is imperative, but the controversy here arises out of the circumstance that this will was executed, and that the testator died long before the *478 passing of the act, and it is'considered that its application to this will would give the act a retrospective operation.
There is nothing in the terms of the act itself which shows that it was intended so to operate, and I concede fully the principle that in general the legislature cannot prescribe and establish a new rule, and give it retrospective operation. But! apprehend that' where the rule is unascertained and unsettled, it belongs to the legislature to ascertain and settle the law, and that’from necessity such a law must operate both prospectively and retrospectively. (a.)
. The case under consideration will illustrate, I think, the existence and the necessity for such a principle. The will of the testator, Edward Wilkinson, contains amongst other things the following devise, viz.- “ My plantation on Slánns Island, I devise to my cousin, William Smith,” and the question is, whether the devisée took, a fee simple, or a life estate only. Before the’ act of 1824, the rule which prevailed in- the Courts of Equity gave him the fee simple, and that which obtained in thé-Courts of law a life estate only. The respective Courts were equally supreme and. independent' in their respective departments, and each were governed by their own rules, but there was no common rule. The law of the land was unsettled and unascertained, and the act of 1824 was notoriously intended for that, purpose. It is the fiat of the people acting through their representatives, as umpire between the clashing opinions, of the two Courts, and must therefore.bepermitted to operate not as anew rule, originating in the act itself, but as a rule of the common law. ■
I was myself one of those who concurred in the rale laid down in the case of Hall vs. Goodwyn and Moore, *479 and my assent to the opinion expressed in that ease, was founded upon mature reflection, and upon the fullest conviction, that it was in strict conformity with the settled rules of law, nor has any thing which has since occurred satisfied my judgment that I was mistaken,. But the circumstances under wlreh the act was passed, and the notorious fact 'that it was intended to secure a uniformity of decision's in the different Courts, leave no doubt that it was intended as a declaratory law; and however confident I may have been in my own opinions, I am constrained to yield to this high authority, and I do so with the less reluctance, from a knowledge of the truth on which the opinions of the Chancery Courts was founded, that where a limited estate was intended to be devised, it is almost if not universally expressed in appropriate terms, and the evil if one should arise out of it, will be very limited in extent.
This conclusion is, I think, warranted by, or rather necessarily grows out of the cases of Taylor vs. Gibson, and Rose vs. Daniel, 3 M‘Cord 451. There the question was whether, when the statute of limitations had commenced to run, the intervening disabilities of infancy in a case of trespass to try titles, would avert its operation.— In the case of Rose and Daniel which had come up some years before, the Court held that it would, but in the subsequent ease of Faysoux vs. Prather, 1 Nott & M‘Cord, 296, that decision was reversed by three Judges to two, and one absent whose known opinion was with the minority. At a subsequent period, and when the Constitutional Court consisted of six judges, the old case of Rose vs. Daniel, and case of Gibson vs. Taylor, both came up on the same question, and the Court being equally divided were unable to pronounce any judgment, and they remained on the docket, when the act of 1834, above referred to, was passed, which also contains a clause declaring that *480 ¿hereafter the statute of limitations should not be construe ed to defeat the rights of minors, when the statute had not barred the right in the lifetime of the ancestor, &c. and when the cases came on to be tried before this Court, the rule originally laid down -in the case of Rose vs. Daniel, and in conformity with the act was adopted, and the reasons, given are, that the divisions of the Court rendered the law uncertain, and the act was declaratory of what the law was; and that a different determination would drive the Court to the necessity of adopting a different rule for the cases under consideration, and those which inightaf-terwards arise.
Now, regarding the case of Hall vs-. Goodwyn tod Moore as binding on the Courts of Law, a different.-rule, as has before been shewn, prevailed in the Courts of Equity, .which rendered.the law' uncertain; so that it stood precisely in the same siíügtion vdth the question in the cases of Gibson vs. Taylor, and Rose vs. Daniel, and all the reasons which operate to give effect to the act in one instance, apply with equal force to the-olher.
I am, therefore, of opinion, that the motion in this case should be granted, and that the postea should be delivered to defendant.. Judgment reversed.

 Vide ante Hall vs. Goodwyn, 442, and Boatwright vs. Faust, 439.